UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LINDA GIBSON,

      Plaintiff,

v.                                                   Case No.:  8:23-cv-1349-KCD

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

## ORDER

Plaintiff Linda Gibson sues under 42 U.S.C. § 405(g) to challenge the Commissioner of Social Security's decision denying her application for disability benefits. (Doc. 1.)[1] For the reasons below, the Commission's decision is affirmed.

## I. Background

The procedural history, administrative record, and law are summarized in the parties' briefs (Docs. 25, 27) and not fully repeated here. In short, Gibson filed for benefits claiming she could not work because of vision problems, neuropathy, sciatica, scoliosis, tachycardia, depression, and anxiety. (Tr. 72.)

---

[1] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and later citations.

After her application was denied, Gibson sought review by an administrative law judge ("ALJ"). (Tr. 128.)

Following a hearing, the ALJ agreed that Gibson was not disabled. (Tr. 17-41.) To make that determination, the ALJ used the multi-step evaluation process established by the Commissioner. *See* 20 C.F.R. § 404.1520(a).[2] The ALJ found that although Gibson had severe impairments of degenerative disc disease, hypertension, panuveitis,[3] immune deficiency disorder, peripheral neuropathy, visual impairment, cardiac dysrhythmias, muscle/ligament/fascia disorder, depression, and anxiety, she retained the residual functional capacity ("RFC") to engage in some work with certain non-exertional limitations:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with exceptions. The claimant can lift twenty pounds occasionally and ten pounds frequently. She can stand/walk six hours

[2] An individual claiming Social Security disability benefits must prove that she is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

[3] "Panuveitis involves inflammation inside the eye that similarly affects the front, middle and back of the eye." Johns Hopkins Medicine, Uveitis, available at https://www.hopkinsmedicine.org/health/conditions-and-diseases/uveitis (last visited May 2, 2024).

per day and sit six hours per day. The claimant can never climb ladders, ropes, and scaffolds; and occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She can frequently reach, handle, finger and feel. The claimant must be able to use eyeglasses. She must avoid vibration, hazardous machinery, and heights. She can understand, remember, and carry out routine and repetitive instructions and tasks. The claimant cannot perform work requiring a specific production rate or pace, such as assembly lines. She can maintain attention and concentration for two hours at a time, but does require the standard morning, lunch, and afternoon breaks.

(Tr. 24.)

After considering the RFC and other evidence, including vocational expert testimony, the ALJ ultimately concluded that Gibson could not perform her past relevant work but could perform other work in the national economy. (Tr. 40.) Thus, Gibson was not disabled as that term is defined in this context. (Tr. 40-41.) Gibson further exhausted her administrative remedies, and this lawsuit followed. (Doc. 1.)

## II. Standard of Review

Review of the Commissioner's (and, by extension, the ALJ's) decision denying benefits is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a mere scintilla but less than a preponderance. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The

Supreme Court recently explained, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

When determining whether the ALJ's decision is supported by substantial evidence, the court must view the record as a whole, considering evidence favorable and unfavorable to the Commissioner. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. And even if the evidence preponderates against the Commissioner, the reviewing court must affirm if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Finally, "[u]nder a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports [her] position; [she] must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017).

### III. Analysis

Gibson argues the ALJ erred in just one way—by failing to properly account for her vision impairment in the RFC. (Doc. 25 at 3.) In step four of the analytical process, the ALJ assesses a claimant's RFC and ability to do past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv). The RFC, defined as the most the claimant can still do despite her limitations, is based on an evaluation of

all the relevant evidence in the record. *See id.* §§ 404.1520(e), 404.1545(a)(1) and (a)(3); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996). Put simply, the ALJ is "required to consider all impairments, regardless of severity, in conjunction with one another" when building the RFC. *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014).

Error arises only when the ALJ rejects medical evidence from the RFC "without (at least) providing a good reason for doing so." *Sneed v. Comm'r of Soc. Sec.*, No. 6:13-CV-1453-ORL-TBS, 2015 WL 1268257, at *7 (M.D. Fla. Mar. 19, 2015); *see also Marbury v. Sullivan*, 957 F.2d 837, 840 (11th Cir. 1992) (Johnson, J., concurring) ("Although the ALJ could have legitimately discounted the diagnoses, he could have done so only if he had clearly articulated his reasons for such action[.]"); *Whisby v. Colvin*, No. 5:13-CV-360 MTT, 2015 WL 150188, at *3-5 (M.D. Ga. Jan. 12, 2015) (finding error when the ALJ made an arbitrary determination).

At step two, the ALJ found that Gibson's panuveitis and visual impairment constituted severe impairments. (Tr. 20.) But, according to Gibson, the only limitation in the RFC that touches on these impairments—that she "must be able to use eyeglasses"—does not account for her diagnosis of panuveitis and the "resulting symptoms of pain, blurred vision, seeing floaters,

redness, itchiness, and eye strain when looking at anything for thirty minutes or longer as [she] testified to." (Doc. 25 at 3, citing Tr. 57, 61-62.)

Contrary to Gibson's claim, the ALJ did not err in this respect. In the RFC assessment, the ALJ specifically considered Gibson's vision-related conditions. Her treatment records and her reported activities support a conclusion that she failed to prove her allegations of any greater limitations than those in the RFC.

At the outset, the Court notes that a diagnosis of panuveitis alone does not establish work-related limitations. *See Moore*, 405 F.3d at 1213 n.6 (holding "the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard"); *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (holding "a diagnosis or a mere showing of a deviation from purely medical standards of bodily perfection or normality is insufficient; instead, the claimant must show the effect of the impairment on her ability to work").

Turning to the record here, the ALJ considered the medical evidence related to panuveitis when discussing Gibson's treatment for reduced vision from inflammation. (Tr. 26, 541-41, 681-704.) The ALJ noted that the inflammation improved with treatment. (Tr. 26, 695.) The ALJ also considered multiple eye exams, some irregular, but improvement was seen with treatment. Noncompliance is discussed throughout the records as well, and

noted in the ALJ's decision. (Tr. 26, 31, 32, 33.) For example, in December 2021 Gibson reported decreased vision with floaters but was non-compliant with treatment (no treatment for a year) and had not returned as requested. (Tr. 32, 687.) Once she restarted mediation, the inflammation improved. (Tr. 33, 692.)

Gibson alleges that the only limitation in the RFC (wearing eyeglasses) fails to account for the symptoms of panuveitis (pain, blurred vision, seeking floaters, redness itchiness, and eye strain). But wearing eyeglasses was not the only restriction imposed in the RFC to address such symptoms. The ALJ stated, "[Gibson's] reduced vision along with reduced concentration and awareness caused by pain and neuropathy are also addressed with the environmental limitations in the residual functional capacity limiting her exposure to conditions that could pose a danger. In addition, she is limited in her exposure to conditions that could exacerbate her pain or other symptoms." (Tr. 26.) The ALJ further limited her to jobs where a specific production rate was not required. (Tr. 24.)

The ALJ also considered the opinion of Dr. Anubha Agarwal, M.D., who completed a "Medical Statement of Ability to Do Work-Related Activities (Physical)." (Tr. 1668.) Dr. Agarwal found that, due to her visual impairment, Gibson should avoid ordinary hazards in the workplace and cannot read very small print, but she could read ordinary newspaper or book print and view a

computer screen. (Tr. 1671.) The ALJ concluded that Dr. Agarwal's opinion regarding the vision listing is consistent with the evidence and supported by the records from Gibson's eye exams. (Tr. 38.)

The ALJ also considered Gibson's alleged symptoms, which included floaters in her eyes and blurriness (Tr. 25, 61-62.) The ALJ determined that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the evidence. (Tr. 25.) Although not dispositive, a claimant's activities may show that her symptoms are not as limiting as alleged. *See* 20 C.F.R. § 404.1529(c)(3)(i); SSR 16-3p; *Dyer*, 395 F.3d at 1212. As discussed by the ALJ, Gibson testified that she went "out to dinner and movies," cooked quick meals, had no problems with personal care, went grocery shopping, and sometimes ordered on Amazon. (Tr. 25, 36, 64.) She also drove during the daytime, which included to the store about ten miles from her home. (Tr. 36, 57.)

As the ALJ noted, Gibson completed a function report where she reported cooking, performing household chores, including cleaning and laundry. (Tr. 37, 207-08.) She also reported she watched television and engaged in social activities, including talking on the phone, video chats, texting, and going to the park, though she alleged she did not pay attention well and had difficulty following written and spoken instructions. (Tr. 37, 209, 211.) In the same function report, she reported wearing glasses when "[r]eading, writing,

8

watching TV, [and] driving." (Tr. 211.) Similarly, Gibson's boyfriend completed a third-party function report, in which he reported that Gibson wore glasses "when reading." (Tr. 37, 220.) All this evidence undermines Gibson's testimony about her symptoms, and it was enough for the ALJ to reject her claims.

Gibson argues that records dated after the expiration of her insured status showed a worsening of her vision. (Doc. 25 at 9-10.) But the relevant question is whether Gibson was disabled by her date last insured (December 31, 2020). *See* 42 U.S.C. §§ 416(i)(3), 423(a), (c); 20 C.F.R. §§ 404.101, 404.130, 404.131. The ALJ, nevertheless, discussed the evidence post-dating the end of Gibson's insured status. (Tr. 32-33.) Thus, Gibson has shown no error in this regard.

At bottom, there is sufficient evidence to uphold the RFC. Gibson may believe the record supports more restrictions than imposed by the ALJ, but the Court may not reweigh the evidence. *Bloodsworth*, 703 F.2d at 1239. The question is simply whether there is enough evidence to satisfy a reasonable mind of the ALJ's decision. Here, there is.

## IV. Conclusion

Considering the record as a whole, substantial evidence supports the ALJ's findings. Accordingly, the Court **AFFIRMS** the Commissioner's decision and directs the Clerk to enter judgment for the Commissioner and against Linda Gibson and close the file.

**ORDERED** in Fort Myers, Florida on May 3, 2024.


Kyle C. Dudek
United States Magistrate Judge

Copies:  All Parties of Record